IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:12CR85

DWANE WASHINGTON,

Petitioner.

## MEMORANDUM OPINION

Dwane Washington, a federal inmate proceeding *pro se*, brings this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 137). The Government has moved to dismiss. For the reasons set forth below, the § 2255 Motion will be DENIED.

### I. Procedural History

"A grand jury charged Washington with the interstate transportation of a minor with the intent that the minor engage in prostitution or other criminal sexual activity, in violation of 18 U.S.C. § 2423(a)." *United States v. Washington*, 743 F.3d 938, 940 (4th Cir. 2014). Following a jury trial, Washington was convicted of the charge. *Id.* The Court sentenced Mr. Washington to a variant sentence of 240 months of imprisonment. *Id.* at 944. Mr. Washington appealed. On appeal, the United States Court of Appeals for the Fourth Circuit summarized the evidence of Mr. Washington's guilt as follows:

> In the spring of 2012, Washington, then thirty-two years old, met R.C., a fourteen-year-old runaway. Washington approached R.C. on a street in Maryland, where she had already begun engaging in prostitution and using drugs. Almost immediately, he became her pimp. At some point, R.C. told Washington that she was nineteen years old. Washington took R.C. to Nashville and Clarksville, Tennessee; Birmingham and Huntsville, Alabama; and Richmond, Virginia. In each city, Washington used the internet to advertise R.C. as a prostitute. He developed a pricing scale and kept nearly all of the proceeds, which he used to

pay for food, lodging, travel, and drugs. Washington also had sex with R.C. on multiple occasions.

In Birmingham, R.C. was arrested and charged with prostitution. She gave the police a false name and date of birth, claiming that she was nineteen years old.

Washington and R.C. were later arrested in Richmond in an FBI sting operation. During an interview with an FBI agent, R.C. confirmed that Washington was her pimp.

*Id.* at 940.

In the § 2255 Motion, Mr. Washington, who was represented by Charles Gavin at trial, asserts that he was denied the effective assistance of counsel upon the following grounds:

| | |
|---|---|
| Claim 1 | Counsel failed to adequately prepare Mr. Washington to testify during Mr. Washington's trial. (§ 2255 Mot. 4.)[1] |
| Claim 2 | Counsel's inadequate preparation for trial caused counsel:<br>(a) to allow a Government witness to testify who did not want to testify, (*id.* at 5);<br>(b) to not exploit the memory lapse by Mr. May; (*id.*); and,<br>(c) to take advantage of the fact that the victim did not wish to testify against Mr. Washington, (*id.*). |
| Claim 3 | (a) In his opening statement counsel told the jury that Mr. Washington had just been released from jail. (*Id.* at 7.)<br>(b) During Mr. Daniel's testimony, counsel stated, "I understand what is happening here, but . . ." (*Id.*) |
| Claim 4 | Counsel failed to spend an adequate amount of time with Mr. Washington prior to trial. (*Id.* at 8.) |
| Claim 11 | Counsel failed to file a motion to suppress with respect to Mr. Washington's cell phone. (*Id.* at 13.) |
| Claim 12 | Counsel failed to call a witness. (*Id.* at 14.) |
| Claim 14 | Appellate counsel failed to communicate with Mr. Washington and failed to raise on appeal the issues Mr. Washington wished to pursue. (*Id.*) |

---

[1] The Court employs the pagination assigned to Mr. Washington's submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation and spelling in the quotations from Washington's submissions.

2

Additionally, Mr. Washington contends that the prosecution engaged in multiple instances of misconduct. Mr. Washington asserts he was unable to raise this misconduct on his direct appeal due to the ineffective assistance of his appellate counsel. The defaulted issues of alleged prosecutorial misconduct were as follows:

| | |
|---|---|
| Claim 5 | "The Government went to great lengths to keep the defense from exploring into the juvenile's sexual life prior to the day she ran away." (*Id.* at 10.) |
| Claim 6 | "The Government compelled witnesses in this case to testify against their will by subpoena, and used the threat of prosecution for failing to appear." (*Id.*) |
| Claim 7 | The Government manufactured a conflict of interest in order to have Mr. Washington's initial counsel, Carolyn Grady, replaced. (*Id.* at 11.) |
| Claim 8 | The Government failed to prove an element of the crime. (*Id.*) |
| Claim 10 | The prosecution threatened one of Mr. Washington's witnesses, Josh Gahan, in order to induce Gahan not to testify. (*Id.* at 13.) |

Finally, Mr. Washington raises the following additional claims:

| | |
|---|---|
| Claim 9 | (a) The Court abused its discretion by failing to appoint a new attorney. (*Id.* at 12.)<br>(b) The Court abused its discretion by sentencing Mr. Washington above the United States Sentencing Guidelines. (*Id.*)<br>(c) The Court abused its discretion by not ordering a psychological evaluation of Mr. Washington. (*Id.*) |
| Claim 13 | "The defendant had an extremely bias[ed] jury . . . ." (*Id.* at 14.) |
| Claim 15 | "The District Court abused its discretion in the filing of this motion . . . ." (*Id.* at 15.) |

The Government has responded and requested the dismissal of Mr. Washington's claims. (ECF No. 146.) Mr. Washington filed a Reply (ECF No. 150) and a number of documents in support of his claims for relief (ECF Nos. 151–52.) For the reasons set forth below, Mr.

Washington's claims will be DISMISSED[2] and the § 2255 Motion (ECF No. 137) will be DENIED.

## II. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Trial Counsel Claims

In Claim 1, Mr. Washington complains that counsel failed to adequately prepare Mr. Washington to testify at trial. During the trial, the Court conducted a colloquy with Mr. Washington regarding whether Mr. Washington knew he had the right to testify and whether Washington wished to testify. (Trial Tr. 379–80, ECF No. 146–3.) Mr. Washington acknowledged that his counsel had told him that he did not think it was in Mr. Washington's best

---

[2] The Court has reviewed Mr. Washington's Reply and the supporting documents. To the extent that Mr. Washington seeks relief based on some of the inchoate arguments for relief lurking in those documents, he fails to state a viable basis for relief given the record before the Court.

interest to testify. (Trial Tr. at 380.) Mr. Washington acknowledged that he knew that ultimately the choice to testify was his and declined to testify. (Trial Tr. 379–81.)

In his § 2255 Motion, Mr. Washington now says that he did not testify because his attorney told him "I don't have any questions to ask you." (§ 2255 Mot. 4.) Mr. Washington's suggestion that he was coerced into not testifying because of any lack of preparation from counsel is patently false. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted) (observing that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted ... colloquy are always palpably incredible and patently frivolous or false"). Mr. Gavin, Mr. Washington's trial counsel, swears that:

> Based on my conversations with Mr. Washington prior to trial, it was my belief that he did not plan to testify. Accordingly, I did not prepare a written set of questions for him to answer because I was under the impression that it was unnecessary. If, however, Mr. Washington had chosen to testify, I knew every facet and fact of Mr. Washington's case, enabling me, if asked, to adequately present questions allowing Mr. Washington to tell his side of the story.

(ECF No. 146–1, at 2.) Moreover, the Court's colloquy provided Mr. Washington with an opportunity to express whether there was something about counsel's conduct that was preventing him from exercising his desire to testify. Nevertheless, Mr. Washington did not suggest that counsel's lack of preparation was preventing him from testifying. Given these circumstances, Mr. Washington fails to demonstrate any deficiency on counsel's part prevented him from testifying. Furthermore, Mr. Washington cannot demonstrate prejudice as he fails to proffer what testimony he could have provided that would have altered the outcome of the case. *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the

5

witness] would have testified to in exculpation"). Having observed Mr. Washington's intemperate nature and refusal to acknowledge any guilt in his own conduct, the Court agrees with Mr. Gavin's assessment that Mr. Washington would not have been good witness. Considering the substantial evidence of Mr. Washington's guilt, no testimony from Mr. Washington would have altered the outcome of his trial. Because Mr. Washington fails to demonstrate deficiency or prejudice, Claim 1 will be DISMISSED.

Next, in Claim 2(a) and 2(b), Mr. Washington contends that Mr. Gavin's inadequate preparation allowed the Government to make Mr. Daniel May testify and prevented Mr. Gavin from exploiting the memory lapse by Mr. May. Mr. May was a friend of Mr. Washington. (Trial Tr. 267, ECF No. 146-2.) Mr. Washington contacted Mr. May upon arriving in Richmond with the victim. (Trial Tr. 269-70.) Although Mr. May previously had provided law enforcement officials with inculpatory statements regarding Mr. Washington's pimping of the victim, at trial "Mr. May asserted an 'I don't know anything position'" which counsel perceived as "an attempt to either thwart the efforts of law enforcement, or to protect Mr. Washington." (ECF No. 146-1, at 3.)

The prosecutor then attempted to impeach Mr. May and to indirectly reveal Mr. May's prior statements to law enforcement officials. (Trial Tr. 270-72.) Mr. Gavin objected and requested a cautionary instruction. (Trial Tr. 273.) The Court then instructed the jury that "the answers are the evidence and not what the lawyers say." (Trial Tr. 273.)

Mr. Gavin states:

> At the conclusion of [the prosecutor's] questioning, I chose not to ask Mr. May questions because, although his answers provided no direct evidence against Mr. Washington, his answers also did not help Mr. Washington. I considered Mr. May's testimony to be incredible. An attempt to use Mr. May's testimony as part

6

of Mr. Washington's case, in my opinion, added little value to Mr. Washington's defense.

(ECF No. 146-1, at 3.)

Mr. Washington fails to enlighten the Court as to how Mr. Gavin could have prevented Mr. May from taking the stand. Mr. Washington also fails to demonstrate how Mr. Gavin could have exploited Mr. May's incredible memory lapse. As Mr. Gavin competently handled Mr. May's testimony, Mr. Washington fails to demonstrate deficiency or prejudice. Claim 2(a) and Claim 2(b) will be DISMISSED.

In Claim 2(c), Mr. Washington faults counsel for failing to take advantage of the fact that the victim did not want to testify against Mr. Washington. The victim readily admitted that she did not want to testify (Trial Tr. 141). Mr. Washington fails to explain how Mr. Gavin could have exploited the victim's reluctance to the aid of the defense. Accordingly, Claim 2(c) will be DISMISSED because Mr. Washington fails to demonstrate deficiency or prejudice.

In Claim 3(a), Mr. Washington faults Mr. Gavin for telling the jury during opening statements that Mr. Washington only recently had been released from incarceration. Mr. Gavin acknowledges mentioning Mr. Washington's incarceration during his opening statement and provides the following explanation:

> As part of my strategy, it was my opinion that the only way that Mr. Washington would be found not guilty was to explain to the jury the basis for his "journey" beginning in Baltimore and continuing throughout the southeast and back to Richmond. A regular person, without a job, or money, or other reason, would not typically have a reason to travel from town to town on a journey to visit friends and places without there being a legitimate or supported reason. In this case, Mr. Washington's reason was that he had just been released from prison and wanted to see things that he had not seen and/or visit friends with whom he had not communicated in years. Accordingly, to tell the complete story, it was my strategy to reveal that in the very beginning.

7

(ECF No. 146–1, at 4.) Given Mr. Gavin's overall trial strategy, revealing Mr. Washington's prior incarceration in opening statements was a reasonable trial tactic. Accordingly, Claim 3(a) will be DISMISSED because Mr. Washington fails to demonstrate that Mr. Gavin acted deficiently.

In Claim 3(b), Mr. Washington faults Mr. Gavin for stating, when Mr. May suffered his incredible memory loss, that, "I understand what is happening here, but . . . ." (§ 2255 Mot. 7.) Mr. Washington contends this statement led the jury to believe that Mr. May was not remembering things because he wanted to help his friend Mr. Washington. The jury would have figured that out without any statement from Mr. Gavin. Mr. Washington fails to demonstrate any reasonable probability that he would have been acquitted but for the above statement. Accordingly, Claim 3(b) will be DISMISSED because Mr. Washington fails to demonstrate prejudice.

In Claim 4, Mr. Washington faults Mr. Gavin for only meeting with him before trial on two occasions for a total of an hour and thirty minutes. Mr. Gavin disputes this contention and states:

> I can say, without question, that I worked diligently to both investigate and prepare his case. I tracked down the telephone numbers and interviewed witnesses that were identified in Tennessee and went through efforts to have subpoenas issued for their attendance at trial. I further investigated witnesses in Alabama including law enforcement. I further investigated and subpoenaed two witnesses from Maryland that had rendered psychological evaluations on the victim for purposes of attacking credibility. Mr. Washington requested me repeatedly to pursue leads which, in my opinion, and based on my strategy, were either frivolous, or unnecessary.
> Mr. Washington is correct in that I have four kids and probably advised him that I had four kids. The size of my family, however, had no impact on my preparation of his defense. Despite Mr. Washington's continuing complaints about me, professionally and personally, I continued to work to the best of my abilities to provide Mr. Washington with an adequate defense.

(ECF No. 146–1, at 4–5.)

To prevail on his allegation that counsel conducted an inadequate investigation, Mr. Washington must identify what an adequate investigation would have revealed. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." (citing *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990))). Mr. Washington has failed to present any compelling evidence as to what a more adequate investigation or further meetings with counsel would have revealed.[3] *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). As Mr. Washington has failed to demonstrate deficiency or prejudice, Claim 4 will be DISMISSED.

Next, in Claim 11, Mr. Washington faults counsel for failing to file a Motion to Suppress with respect to Mr. Washington's cell phone. In this regard, Mr. Washington contends that before obtaining a search warrant for his phone, the Government searched his phone and planted text messages on his phone. Mr. Washington, however, fails to direct the Court to any evidence to support his bald allegation that the Government illegally searched his phone and created text messages which were then used in the case against him. Counsel reasonably declined to pursue a motion to suppress on the grounds alleged here. Furthermore, Mr. Washington fails to demonstrate any reasonable probability of a different result had counsel filed a motion to suppress on the ground Mr. Washington urges here. Claim 11 will be DISMISSED.

---

[3] Mr. Washington asserts that if Mr. Gavin had met with him more frequently he would have known that Mr. Washington wanted to testify. For the reasons previously stated, that assertion is simply not true.

In Claim 12, Mr. Washington faults Mr. Gavin for not calling witnesses for the defense. As Mr. Washington fails to identify the witness or witnesses and supply their testimony, he fails to demonstrate deficiency or prejudice. *See Terry*, 366 F.3d at 316; *Bassette*, 915 F.2d at 940–41. Accordingly, Claim 12 will be DISMISSED.

B.   **Appellate Counsel**

In Claim 14, Mr. Washington critiques the conduct of his appellate counsel. "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Appellate counsel raised two issues on appeal, "(1) whether the district court erred in instructing the jury that the government did not have to prove that Washington knew R.C. was a minor, and (2) whether the court erred by imposing an upward variance." *United States v. Washington*, 743 F.3d 938, 941 (4th Cir. 2014). Although ultimately unsuccessful, these were

10

the strongest claims available to Mr. Washington and provided the greatest opportunity for obtaining any substantial relief. As discussed more fully below, *see infra* Parts III and IV, Mr. Washington fails to identify a claim that was clearly stronger than the claims pursued by appellate counsel. Accordingly, Claim 14 will be DISMISSED because Mr. Washington fails to demonstrate deficiency or prejudice.

### III. Alleged Prosecutorial Misconduct

Mr. Washington raises a number of instances where he asserts that the prosecution engaged in misconduct. These claims, however, are defaulted because Mr. Washington failed to raise them at trial and on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). Mr. Washington responds that the cause for any default is the ineffective assistance of trial and appellate counsel. Accordingly, as a threshold matter, the Court must determine whether counsel performed deficiently for failing to raise the claim.

In Claim 5, Mr. Washington complains that the prosecution engaged in misconduct because it "went to great lengths to keep the defense from exploring into the juvenile's sexual life prior to the day she ran away," but then elicited that information from the juvenile when she took the stand. (§ 2255 Mot. 10.) In an effort to provide context to the juvenile's testimony, the prosecution elicited information regarding how Jeff Watson[4] initially introduced the victim to sex and then encouraged her to take up a life of prostitution. (Trial Tr. 145, 154–55.) The testimony regarding the juvenile's sex life prior to engaging in prostitution violated the terms of a prior ruling of the Court against admitting such testimony, and Mr. Gavin brought that to the attention of the Court. (Trial Tr. 145–46.) The Court then issued a strong curative instruction.

---

[4] The juvenile regarded Mr. Watson as a father figure and referred to him as such.

11

(Trial Tr. 152–53.) Given these circumstances, counsel reasonably eschewed pursuing this instance of alleged prosecutorial misconduct as an appellate issue. Accordingly, Claim 5 is defaulted and will be DISMISSED.

In Claim 6, Washington complains that "[t]he Government compelled witnesses in this case to testify against their will by subpoena, and used the threat of prosecution for failing to appear." (§ 2255 Mot. 10.) Such actions do not amount to misconduct. Therefore, counsel acted reasonably in declining to pursue the issue. Claim 6 will be DISMISSED.

In Claim 7, Mr. Washington asserts that the Government manufactured a conflict of interest in order to have Mr. Washington's initial counsel, Carolyn Grady, replaced. Mr. Washington insists that the Government pursued Javon Mack as a witness "only to create a conflict of interest between [Ms. Grady] and defendant." (Reply 22, ECF No. 150.) At the time Ms. Grady noted that she had a conflict, she was acting as stand-by counsel because Mr. Washington had decided to represent himself. Although the Government ultimately did not call Javon Mack as a witness, no evidence suggests that the Government mentioned Mack as a witness purely as a subterfuge for disqualifying Ms. Grady. *See Sanders v. United States*, 373 U.S. 1, 19 (1963). Accordingly, counsel reasonably eschewed pursuing this speculative claim of prosecutorial misconduct. Claim 7 will be DISMISSED.

In Claim 8, Mr. Washington contends that the prosecution never proved the requisite mens rea. To convict Mr. Washington, the jury was required to find that Mr. Washington "knowingly transported an individual, who had not attained the age of 18 years, namely, Jane Doe, in interstate commerce with the intent that such individual engage in prostitution or in any sexual activity for which any person can be prosecuted with a criminal offense . . . ." (Trial Tr.

460.) The evidence overwhelmingly demonstrated that Mr. Washington transported the juvenile from different states for the purposes of having the juvenile engage in prostitution. Counsel wisely eschewed pursuing Mr. Washington's frivolous assertions that he did not commit a crime because the juvenile willingly went along with him. (Reply 24 ("When someone volunteer to do something, that removed the 'cause' element in this instant offense . . . .").) Accordingly, Claim 8 will be DISMISSED.

In Claim 10, Mr. Washington complains that one of his witnesses, Josh Gahan, refused to testify for the defense because the Government threaten to withdraw Mr. Gahan's plea deal if he testified for the defense. Mr. Washington fails to proffer the substance of Mr. Gahan's testimony. To the extent the Government indicated that it would withdraw Mr. Gahan's plea offer if he provided incomplete or inaccurate information, that does not amount to prosecutorial misconduct. Given the vagueness of this claim, counsel reasonably declined to raise an objection or pursue the issue on appeal. Accordingly, Claim 10 will be DISMISSED.

### IV. Alleged Trial Court Error

In Claim 9(a), Mr. Washington contends that the Court abused its discretion by refusing to appoint him a new attorney in place of Mr. Gavin. At this juncture, it is appropriate to recite the procedural background surrounding Mr. Gavin's representation of Mr. Washington. By Order entered on July 31, 2012, the Court granted Ms. Grady's motion to withdraw as counsel and appointed Mr. Gavin as stand-by counsel. (ECF No. 46.) The Court set the matter for a two-day jury trial to begin on October 9, 2012. (*Id.*)

On September 6, 2012, the Court received a letter from Mr. Washington complaining that Mr. Gavin was not visiting him as frequently as he would like and requesting that the Court

appoint new counsel. (ECF No. 48.) By Order entered on September 7, 2012, the Court informed Mr. Washington that he had not stated adequate grounds for obtaining new counsel and denied his motion. (ECF No. 49.)

On September 21, 2012, the Court received another letter from Mr. Washington requesting appointment of new counsel. (ECF No. 51.) By Order entered that same day, the Court denied the motion. (ECF No. 50.) On September 25, 2012, the Government filed a motion wherein it requested, *inter alia*, that the Court conduct a hearing on the outstanding motions.[5] (ECF No. 52.)

On October 1, 2012, the Court conducted a hearing on the above motions. (ECF No. 57.) The Court denied Mr. Washington's motion for the appointment of new stand-by counsel, granted Mr. Washington's request to no longer represent himself, and appointed Mr. Gavin as counsel of record. (*Id.*)

In Claim 9(a), Mr. Washington complains that the Court abused its discretion at the October 1, 2012 hearing when it denied his request to be appointed new stand-by counsel. Because he had waived his right to counsel when he elected to represent himself, Mr. Washington had no constitutional right to stand-by counsel. *United States v. Lawrence*, 161 F.3d 250, 253 (4th Cir. 1998) (citations omitted) ("The Sixth Amendment does not require a court to grant advisory counsel to a criminal defendant who chooses to exercise his right to self-representation by proceeding *pro se*."). The record before the Court and from the October 1, 2012 hearing reflects that despite their contentious relationship, Mr. Gavin could provide Mr. Washington adequate assistance. Given this record, appellate counsel reasonably declined to

---

[5] On October 1, 2012, Mr. Gavin on behalf of Mr. Washington filed a Motion for Witness Subpoena for the upcoming trial. (ECF No. 55.) Later that day, the Court conducted an ex parte hearing on the Motion for Witness subpoena and granted the Motion. (ECF No. 59.)

pursue Mr. Washington's assertion that the Court abused its discretion in not appointing him new stand-by counsel. Accordingly, Claim 9(a) will be DISMISSED.

In Claim 9(b), Mr. Washington complains that the Court abused its discretion in sentencing him above the range recommended by the United States Sentencing Guidelines. Claim 9(b) is barred from review here because the Fourth Circuit rejected the claim on direct review, *see United States v. Washington*, 743 F.3d 938, 943–45 (4th Cir. 2014), and Williams fails to direct the Court to an intervening change in the law that would warrant its reconsideration. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) (citing cases); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, Claim 9(b) will be DISMISSED.

In Claim 9(c), Mr. Washington contends that the Court abused its discretion in not ordering a psychological evaluation of Mr. Washington because of the anger Mr. Washington expressed. Neither Ms. Grady nor Mr. Gavin suggested that the Court should order a psychological evaluation of Mr. Washington. While Mr. Washington was arrogant and angry, his conduct before the Court did not suggest he was unstable and that a psychological evaluation was warranted. Accordingly, appellate counsel reasonably declined raising such a claim. Claim 9(c) will be DISMISSED.

In Claim 13, Mr. Washington complains he had an "extremely bias[ed] jury . . . ." (§ 2255 Mot. 14.) This is simply not true. Appellate counsel reasonably declined to pursue this claim. Claim 13 will be DISMISSED.

Finally, in Claim 15, Mr. Washington asserts that the "Court abused its discretion in the filing of this motion . . . ." (*Id.* at 15.) In this regard, Mr. Washington apparently suggests that,

because of his mental state and the restrictions of his incarceration, the Court should have provided him with additional assistance in filing this § 2255 Motion. There is no general constitutional right to appointment of counsel to develop and pursue post-conviction relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Moreover, it is well-established that "the initial burden of presenting a claim [for] post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system." *Johnson v. Avery*, 393 U.S. 483, 488 (1969). Had Mr. Washington presented a colorable claim for relief, the Court would have considered appointing counsel to assist Mr. Washington if the interests of justice so required. Mr. Washington, however, failed to present any viable claim and nothing about his circumstances warrant the appointment of counsel or the provision of further resources from the Court. Claim 15 fails to provide a viable basis for § 2255 relief and will be DISMISSED.

## V. CONCLUSION

Mr. Washington's claims will be DISMISSED. The § 2255 Motion (ECF No. 137) will be DENIED. Mr. Washington's Motion for an Evidentiary Hearing (ECF No. 153) will be DENIED. The action will be DISMISSED. The Court will DENY a certificate of appealability.

An appropriate Order will accompany this Memorandum Opinion.

Date: 10/27/17
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge